*344
 
 Nash, J.
 

 To enable the plaintiff to obtain the relief he seeks, he must show, that Robert Wilson was indebted to him to the amount claimed by him. 2ndly. That the two bond for $5032 32, each, were transferred to him by the administratrix, Mrs. Wilson. 3rd That the amount of these bonds, or so much as was realised from them on the sale of Edwards’ property, was received by the defendants.
 

 That Dr. Wilson was indebted to the plaintiff is sufficiently proved by the evidence, by a deed of Trust executed by him to the plaintiff, and bearing date the 25th of August 1835. He states “that Robert H. Wilson is justly indebted to Henry Doggett, in the sum of $12000 or thereabouts” and to secure that, the debt, together with one to a man by the name of Preston for $4000 or thereabouts, he executed the deed of Trust conveying a number of slaves. The deposition of Peter Morgan proves that he was present at a settlement of the accounts between the plaintiff and R. H. Wilson in 1836, for which he gave his notes or bonds. In addition is the inventory returned to the Probate Court of the County of Gadsden in the State of Florida. In it is the following return ; “notes in favor of H. Doggett against the estate of R. W. Wilson” — total amount $15,878 94-100. This inventory was returned by Judge McBride, who is proved to have been the agent of the administratrix to make it, and to transact other business of the estate, and in whose house she lived for a length of time, after the death of her husband. From the testimony of Morgan it appears, that the plaintiff and R. H. Wilson were at the time he spoke of, engaged in mining in the County of Rutherford in this State. Dr. Wilson died in 1S37. The above testimony satisfactorily proves the indebtedness of the estate of Dr. Wilson to the plaintiff to a very large amount.
 

 ’ The second enquiry is as to the transfer of the two. notes or bonds by the administratrix to the plaintiff.
 

 
 *345
 
 Mrs. Hogan in hor answer states, that, at the request of the plaintiff, she did sign her name upon two papers— she did not know what their contents were, but she supposes they were the bonds or notes in question. This was done in the presence of Mr. McBride, who, it is shown, was her agent in managing the business concerning her accounts, and has since died. Upon inspecting the bonds, which are identified, and are in evidence before us, we find that the endorsement is in.her representative capacity, she signs her name as administratrix, with the will annexed. The hand writing was admitted by the defendant, Christopher Hogan, tobe that of his wife, Mrs. TTogan. when the bonds or notes were examined by him in Florida. This is proved by t.he testimony of Mr. Mosely. Mrs. Hogan did then endorse the notes, and we have little doubt knew for what purpose it. was done.
 

 The remaing enquiry is, as to the reception by the defendant, of the proceeds of the two bonds or notes.
 

 Mr. Mosely informs u§j that the plaintiff delivered to him a number of notes or bonds, executed by John D. Edwards, and payable at different periods to Mrs Wilson. That two of them, each for $5032 32-100. were endorsed in the name of Mrs. Harriet Wilson. These two and another for $4S'37 35-100 were put.in suit by him in the name of Mrs Wilson. He was asked, whether, at the time the plaintiff delivered them, he informed him that the two largest bonds or notes, which were endorsed, belonged to him ; and why he sued on them in the name of Mrs. Wilson
 
 l
 
 IIis answer is, the plaintiff did not so inform him. but he understood from him, at the time, that the estate of Dr. Wilson was largely indebted to him; and he brought, the suit in the name of the administratrix, because he considered the plaintiff as her agent, to whom he would have to pay the money, when collected and they could settle their own matters. He further states, and the exhibits before us prove it, that judgment
 
 *346
 
 was obtained on those three bonds or notes, and the execution was levied on twenty three negroes, as the property of the defendant Edwards, and at the sale the defendant Hogan purchased all but three, at the price of $8770. The whole amount of the sale of the slaves, including some wagon 'wheels, which sold for $12, was $8932, John Doggett, the nephew of the plaintiff, and who professed to be acting for him, having purchased one' of the slaves named Levy for $150. That after the sale a dispute arose between the defendant Hogan and John Doggett, the latter claiming for the plaintiff the whole amount of the sales, and the former claiming the whole for himself in right of his wife. By his advice the parties came to an agreement, the defendant retained all the negroes purchased by him, except one by the name of Jacob, bid off by him at the price of $700, and which he let John Doggett have for his uncle, the plaintiff, and who also retained the boy Levy and the value of the small articles. So that John Doggett received of the proceeds of the sales the sum of $862, and the defendant Hogan $8770. This being so, as admitted in the answer, the defendant Hogan has received money, collected on the sale of the negroes, under the judgment, winch belonged to the plaintiff and for which he is bound to account, for the judgment, though in his wife’s name, was in reality.for the benefit of the plaintiff, jointly with her.
 

 The defendants, in their answers, allege, that the agreement made by John Doggett and themselves, being made by an agent of the plaintiff, amounted to a compromise, and the plaintiff is bound by it. Mr. Mosely is asked, on his examination, whether John Doggett did not say he was the agent of the plaintiff? His answer is, I do not know he was the agent of the plaintiff, but he held himself out as such, and I treated with him as in that character ; and in his cross examination, he states, that he never saw any written authority from the plain tiff to John Dog
 
 *347
 
 gett to act as his agent John Doggett swears he never was the plaintiff’s agent to interfere in the matter of the sales, nor to make any compromise or agreement, and that when the plaintiff was told of it, he expressed great surprise and anger, and declared he would not abide by it. "We do not consider the compromise, set forth in the answer, binding upon the plaintiff — it having been made by a person not authorised to act as his agent.
 

 The defendants further insist, that if the notes were endorsed to the “plaintiff, as he alleges, it was a full and complete discharge of the debt due from the estate of R. H. Wilson,” and if the defendant, Christopher Hogan, afterwards received the money due on them, “it was an act for which he alone, and jointly with his wife, was responsible to the plaintiff, and, therefore, his bill cannot be supported,” and for the further reason, that the plaintiff had, by his own showing, full and adequate relief at law— Mrs Hogan is a proper and necessary party to the bill, if for no other purpose but to procure from the Court a declaration that the judgment now rendered in Florida, in her name, is in part in trust for the plaintiff'.
 

 After the cause had been heard in this Court, a petition was filed by the defendants, praying that the case might be remanded to the Court of Equity for Halifax County, to enable them to amend their answer, so as to bring before the Court grounds of defence, not properly or sufficiently stated therein, and to take additional testimony. If we understand rightly the object which the defendants have in view, it is two fold ; one to introduce matter» which is the proper subject of a cross-bill, and the other to escape from the responsibility they have incurred, by getting rid of the plaintiffs bill, not upon the merits, but upon a matter which is in a great measure teehnicah
 

 We do not feel disposed to deprive the plaintiff of an advantage, which he had acquired, upon either ground, more particularly, as we think the petition comes too late.
 

 
 *348
 
 The plaintiff is entitled to a decree and there must be a reference to the master, to ascertain what portion of the money, raised by the marshal’s sale, was due and. coming to the plaintiff. And in taking the account, he will charge the plaintiff not only with the value of negroes Levy and Jacob, at the price at which they were bought at the sale, and with the @42, which the small articles brought, but also with the $2000 paid him by Mr. Mosely.
 

 Per Curiam.
 

 Decree accordingly.